May it please the Court, my name is Seth Rezko and I represent the petitioner, Cecilia Castillo. Before I begin, I would like to reserve three minutes for my rebuttal. Counsel, can you see the clock? Do you have a counting mechanism where you are? I mean, it's an informal one, Your Honor, so I don't have – I have a clock. Well, I'll do the best – in this particular situation, I'll do my best to keep an eye out for you, but every oralist is responsible for his or her own time. I understand that, Your Honor. Thank you. Very well. You may proceed. Your Honors, this case – the issue in this case is whether Cecilia Castillo, a derivative beneficiary on her mother's asylum claim, has the standing to assert that claim when her mother did not file an appeal of the denial of that application because she was granted cancellation of removal by the immigration judge. Generally, the Supreme Court of the United States has found that there is a presumption against a litigant to assert the third party's standing. However, in Powers v. Ohio, the United States Supreme Court set forth a three-part standard for determining whether a litigant has the right to assert standing on behalf of the third party. Mr. Reskill, before you go into the Article III standing, one question on the IJ's order. There's a line toward the end that encourages Cecilia – this is the derivative – to pursue deferred action through the DHS. What do you make of that, and what should we make of that? Your Honor, I practiced before that immigration judge for a very long time. She found that because she wasn't able to grant the asylum application, that there was an alternative form of relief possibly available. At this time, Cecilia has not applied for deferred action. May apply for that in the future, but since the immigration judge issued that order… And if so, what would the route be? Your Honor, that route, to my knowledge, would still be open. There is also the issue of prosecutorial discretion that may be available to her, but at this time, as I've explained, she has not pursued that route. She went through the administrative proceedings before the BIA. Right, but I guess what we're talking about is DACA relief? Yes. It seems to me – this is Judge Callahan – that you're asking us to formulate a rule that this is a really unusual set of circumstances, because when you go with the derivative, you sort of rise and fall with the person that you go with. And here we have sort of an unusual situation where she wasn't born here, she wouldn't have a qualifying relative, she lived a lot of her life in Guatemala, and I don't see how she would ever – you know, she went derivative on asylum, which the mother lost on, and it would seem to me that she's even weaker on that, and she could have – there's no doubt that she could have, as a minor, filed her own petition initially. And so you're asking us to sort of cram, you know, something square into a round hole, and I just don't – you know, I'm having trouble with that. And then you also write – you also said that cancellation for removal made Myra immediately eligible for lawful permanent residence, but that a grant of asylum would result only in an ability to obtain lawful permanent residence. Can you elaborate on the differences that you're talking about here? Because obviously Celia doesn't have a qualifying relative, she hasn't been here 10 years, or, you know, any of the – you know, she's a – you know, you want – it's sort of like you have this situation where you somehow want to figure out how to get this person relief, but the rule that you're asking for, I'm very concerned about. Your Honor, with all due respect, I would take the position that it's not that uncommon. I would take the position that it's very common for a principal applicant to bring their children to the United States based on that asylum application. I would argue that it's very common for the application for asylum to be pending with immigration for a very long time. Except they didn't – the mother didn't bring her here. She spent eight years in Guatemala. That's correct, but she did come here and she wrote on her mother's asylum application. She was placed in proceedings based on, to my knowledge, the mother being referred by ICE to the immigration judge because they did not grant the mother's asylum application. I would argue that Celia is at the mercy of her mother's application, but while the mother was able to establish the requisite equities, the mother, like many – like money undocumented before the immigration court, can apply for multiple forms of relief that the beneficiary isn't eligible for, that the beneficiary has – like is completely dependent on the mother's application. But the mother, you know, if she's granted her lawful permanent residence through cancellation, why is she going to apply for a form of relief that's less than permanent residence? A granting of asylum will grant her only refugee status. She would be eligible for a lawful permanent residence in a year if she applies. But why is she going to apply? It doesn't become practical if she's going to appeal a decision by an immigration judge denying her asylum when she's already been granted lawful permanent residence. And I would argue that that is not so unusual for parents to bring – to have their children be brought before the immigration proceedings where these children are reliant on those applications and mom or the parent has the application granted. That's where the hindrance comes in. Now that mom – It's not unusual to do the derivative. I agree with you on that. But where – but I haven't seen a situation like this in the nine years I've been here where one strays off like this. I don't mean any disrespect. I can foresee this. I can't say that I haven't been doing the immigration proceedings before the immigration court in a while. But I do see this happening where mom or any parent is applying for asylum, does become eligible for cancellation of removal because these asylum applications have taken so long to be adjudicated and brought before the immigration court that the parent has accumulated the physical presence. The parent has the qualifying relative. And the child is left holding the asylum application simply hoping that it gets granted. I would say that because mom now has no incentive, no motivation to file the appeal, which I thought was critical in the Supreme Court's analysis in Powers v. Ohio, in Miller v. Albright, that this practical incentive, this practical motivation, this hindrance is created much more so in this case as it was in Miller v. Albright where the father, Charlie Miller, just decided, I don't want to opt to pursue an appeal when his appeal rights are ripening at a time when he's dismissed as a party. Here Celia's mother, her interest in obtaining status through either asylum or cancellation became moot because the immigration judge granted her her lawful permanent residence. Counsel, have you argued that as a derivative, Celia should have also been granted the same relief as her mother? Is there some theory under which she could have been entitled automatically to the same relief that her mother got? Your Honor, the only method would be to have Celia follow the coattails of her mother, but only because Celia's mother now becomes a qualifying relative to Celia, but because Celia had not been in the United States for more than 10 years, she would be ineligible to qualify on her own. Her mother came under the 10-year rule, and she's not here 10 years, so she doesn't qualify. So she cannot qualify on her own, and there is no derivative status for a cancellation applicant. She would have had to have done so on her own, but because individuals have the right to file multiple forms of relief, I think the derivatives of the one left shortchanged. When mom has no more incentive now to pursue any litigation, like I said, unlike the litigant Charlie Miller, who had every incentive in Miller v. Albright to pursue the gender discrimination that was applied to him and the automatic citizenship that he chose, as the Court found, that he just simply opted not to pursue an appeal. I believe in Miller v. Albright, the Court, Justice O'Connor, in the concurring opinion, found that, let's look at the case Craig v. Boren. In that case, we have the disparity between the drinking age requirements between male and female. When the male became 21 years of age, the Court found, well, that issue, he's right, became moot, because it had already become 21, the age, the drinking age requirement had already, he had already become the age that was required to drink. Because of the mootness in his interest, the Court found that there was a hindrance. How old is Celia now? Celia's 20 right now. Where is she? I apologize, Your Honor. Where? I just wanted to say that Celia still has an ability to apply for withholding of removal on her own. That also has not been done. We would be requesting, in addition to finding that Celia has standing, to have the case remanded back to the Board of Immigration Appeals to allow Celia, who still is a minor, to apply on her own. Well, that raises an interesting question, I guess, in my mind. I was going to ask the government. Do you think that you have a right to derivative withholding? The BIA has held before that there is no derivative right on withholding, as there is in asylum. You know, I think it becomes… I mean, the question is, then, was this really because there's – if it's true that there's no derivative right, then this may have been a freestanding withholding application in the first instance. That is correct. Under these set of circumstances, the immigration judge did not find it necessary for Celia to file her own application. And counsel went in with the understanding that because no new application was necessary, we relied on Celia's mother's application. If we were instructed or we believed that it would be necessary for Celia to have filed her own application, then we would have done so. But in practical purposes, I would say that we're dealing in these cases with minors who are brought into the United States, very limited ability sometimes to speak English, not having counsel. They're not entitled to counsel. They're being – in a situation now where they're advised, file your own asylum application or file your own application of withholding or removal, that usually is strictly based on the parent's fear, persecution. So I would argue it makes sense to limit the acts of the minor in having to do things on her own,  Counsel, you're down to three minutes. I just want to mention that to you. Okay. I would like to have that opportunity to rebut the government. Thank you. I do want to just close by stating that we are asking the court to find the necessary standing because the three steps have been met, including the hindrance, as I've explained. And we would ask that the proceedings also be remanded to allow Celia to apply for asylum or withholding or removal. Thank you, counsel. We'll now hear from the government. Good morning. May it please the Court. My name is Jesse Bless. I represent the Attorney General of the United States. I just – Mr. Resco, are you still with us? I am. Okay. I just want to start by pointing out that the immigration judge, before proceeding to the merits of this case, asked counsel for Petitioner if Celia was pursuing her own claim, and she said no. That's on page 92. Yeah. There's a funny – it's a – there's an odd exchange on 92 where it says, well, we're pursuing withholding on behalf of the older daughter and not cancellation or something. It was hard for me to – it was a little bit ambiguous. I mean, my question really was this. Do you think that there is a derivative right under withholding as there is under asylum or not? There is not under this Court's case law now. Right. So everybody was proceeding here under affection that she had a derivative right to petition for withholding. The reason I ask this is we – this came up in another case where it's pretty similar to this one. withholding, but it's too late for asylum. And then the derivative child appeals. And the question in that case is, does the checkmark on withholding, given that there's no derivative right to withholding, constitute an independent request for withholding? I don't know the answer to that, but that's – it's – and it's not – they haven't raised that particularly in this case, but I was just curious as to the government's view. Well, the first step in applying for relief removal is filing an application. Right. And so without that application being filed – and here, Celia never put forth the application, and she didn't file a motion to reopen with the board suggesting that now that her mother had been denied, I am now pursuing my own rights through filing of an application. And that would have been the first step. But do you need a separate application in a derivative case? Yes. Always? Always. Even for asylum? Yes. All right. Incidentally, we're saying withholding. Is that the same as cancellation, at least for purposes of our discussion here or not? No. Asylum is – when you're talking about asylum and withholding of removal and protection under Article III of the Convention Against Torture, we're talking about someone who's seeking a form of relief based on a fear of persecution. Cancellation is a form of relief that – discretionary relief that the attorney general actually – And that's what was given here. That's what was given. That's based really on hardship of a qualifying family member. Right. I couldn't tell from the record who – there was a citizen-born child, and that's the qualifying record. Yes. And so was the hardship because of that child? Correct. That he would face extremely unusual hardship as to Christopher, which is Celia's brother, Ms. Dela Cruz's son. I want to talk about the – there's two parts of the standing question presented in this case. Just before we get into that, one other preliminary question. One thing that also, I guess, disturbed me a bit about this case is that the board acted on its own. The Department of Justice didn't raise standing. Standing was never in the case. The board just issues a decision without affording the petitioner the opportunity to brief it. Now, normally, we'd send it back and say you have to give the petitioner an opportunity to address the argument. They haven't raised that in this case, but I'm, I guess, curious as to why that didn't happen. Like Article III courts that deal with jurisdictional matters, the board has to deal with its authority whether it's raised by the parties or not. True. I'll grant you that. I'm just saying – I'm talking about the – once the board raises jurisdiction, then it ought to afford the parties the opportunity to brief jurisdiction. I mean, the board acted entirely without, without any assistance from the parties, either the government or, or the petitioner, right? And there is an avenue for relief within 30 days. Wait a minute. Answer Judge Thomas's question. Did the issue of standing ever get briefed by the parties? No, it did not. However, if there was an avenue for the petitioner to file a motion for reconsideration within 30 days, and that was not taken. Sure. But our case law, when we talk about the board raising issues on its own, says that the board has to give the parties a chance to brief it. That doesn't – we don't require them to file a motion to reopen. I grant your point, but I'm just saying our case law is to the contrary in terms of what the board ought to be doing. Well, so your point is that they have to consider their own jurisdiction always. But even, even if that were the case, that they should have had an opportunity, then a motion for reconsideration would have been the next stop. I believe there's a case, I think it might be Singh, where a person wasn't allowed to respond to an adverse credibility. Are you distinguishing that from considering your own jurisdiction? Right. That's where it's a matter of the board's authority. If they have to address their authority in the first instance, there is – I'm not familiar with Singh on its – as in this case, but one avenue would have been a motion to reconsider. Or the argument could have been raised in the opening brief. It was not. This is, this is – Why would they raise it in the opening brief? Well, they should have – Are you talking about the opening brief to us? Of course. Oh, yeah, okay. I mean, I just – you know, there's – I mean, you know, I – the question is probably one where it was, you know, it was a – when we briefed the petition for review, the petitioner accepted the board's holding. Right. The reason this all gets muddled is that everybody was proceeding, it seems to me, under a false assumption. I mean, if the government's position is there's no derivative right to withholding, nobody raised that. That goes all the way through the IJ. The IJ issues a ruling on withholding for everybody. It doesn't say you don't have a derivative right. It goes up on appeal. And the government doesn't raise standing. It doesn't raise the fact there's probably no derivative right to withholding. And the BIA issues a sua sponde order. And I'm not – I'm not saying that that may not be entirely correct and nothing would have changed. But it's an odd posture when everybody's sort of proceeding, the government included, under two false assumptions. Correct me if I'm wrong. The IJ did put in his – I believe it was her decision that there's no derivative withholding of removal. I think she said derivative cancellation. I think she said both. Okay. Okay. Well, is this – Again, I read it just before I walked in. Counsel, so far as standing is concerned, whether it's third-party standing or whatever, however you frame it, what is the existing statutory authority or, for that matter, regulation authority which deals with standing in this case? Before the board? Before the board, the IJ, anywhere? Anything having to do with this issue of standing in this case? And start with the board. That's fine. Before the board. The board has long held that it may only act pursuant to the authority granted to it by Congress or the Attorney General. Okay. So that's case law. Is there a board decision which specifically describes the standing rules that apply? Is there a reg that describes standing rules? No, there's not. It's a formulation of case law that fills the gap. But it's universally accepted that the board can only act pursuant to the powers granted to it by Congress. Okay. It very well may be universally accepted, but I need a case. I have not been able to find a case which specifically sets forth the derivative standing issue upon which the BIA relies because they haven't signed any. They just – it's an ipsy-dixit. There is no standing, period. No site to a rule, no site to a reg, no site to a statute or a case. In their decision, that's correct. So what is the government relying on? Two things. There's – it's decisions in manner of SANO that's cited in our supplemental brief that doesn't directly deal with the standing but directs with the board's authority to act. In our answering brief, when we defended the board's position in this case, we talked about it in terms of mootness. What the board was saying that – what the board was holding was that there's no relief that it can grant in this case because without the principal applicant, it cannot grant a benefit. It can't grant the relief that Celia sought, which was asylum. As Judge Callahan put perfectly, a principle – an application for asylum rises or falls with the principal. If the principal opts out, there's no viable application. And the – and the INA, too – But you have no case for that specific proposition, do you? That – that it's moot? Yeah. Yeah. Either standing or mootness. The statute makes it perfectly clear. What section of the statute? INA, the law of asylum, 20A, B3A. To be granted derivative asylum, the principal first must be granted asylum. Not apply. Granted asylum. The regulations. That has nothing to do with the right to appeal from the denial of a – of an application. I – obviously, that's true. You have to win the case in order to get derivative status. But I don't think that statute addresses the right to appeal a denial of the application. It seems to me there isn't – there isn't an exact answer out there. You're just arguing for the right answer. And each place takes an inference. And so that, you know, the petitioner's arguing for one and you're arguing for another, but there isn't – there isn't a case that holds exactly what either of you are saying. But I'm – is there – you know, apparently, are there a lot of people that fall into this category? I mean, she seems to be – you know, I mean, all the things for asylum here that – that the primary is asking for actually basically happened before she was even born. And so her asylum application looks terribly weak from my perspective at this point. But I don't know. Maybe there's more to it than what I'm saying. But that being said, she isn't – she's chosen not to pursue other things. Is there something else someone in this situation can do? Absolutely. In the experience of our office, what commonly happens is if a principal has another avenue for relief, the only thing that a derivative can do is to file their own application. And that happens nine times out of ten, which is why when this Court receives a petition for review, it's never on behalf of a derivative that may have explored another avenue for relief. It's the person who's now the principal. There was a – there was a – Well, actually, this is the third time I've seen this, so. And that's – and that's exactly correct. In 2005, this Court held an unpublished decision that a derivative's claim was moot because the principal did not file an appeal. That was on a panel with Hawkins and Bybee. Right. And I can't cite that because it's – No. Can you cite the other cases? No, but – I mean, it seems to be a novel issue. It is. And Miller – I guess it sort of comes down in a sense on the merits to Miller and what's a hindrance. Right. In this Court, I put in, you know, Miller is a very difficult case to explore because there was not a majority holding on the issue of standing. The Attorney General would urge this – urge this Court to adopt the comprehensive analysis by Judge O'Connor – Justice O'Connor. There, she went through – she explored the four categories on pages 449 and 50 of the decision where there was four types of situations that constituted a genuine obstacle. It's not just any hindrance. It's a genuine obstacle. Number one is a person with a third party, in this case that would be Dela Cruz, happens to die. That doesn't – that's not present here. Number two would be a case like the jurors in Campbell or Powers where they have just no ability to pursue their own claim in a – in a – in a efficient manner because of the procedural problems. They're just not going to be able to prove that they – equal protection rights were discriminated against at the preemptory stage of jury selection. Number three is there would be – there would be privacy concerns. Those aren't implicated here. And number four would be an insurmountable procedural obstacle. In – in Craig v. Bourne, it was the 21-year-old or 18-year-old ages out of the class, or a doctor who wants to represent the third party rights of pregnant women, now, who only have obviously a limited amount of time in which to pursue their own rights. None of the four categories discussed by Judge – Justice O'Connick are present here. In fact – Well, now, could she – the mother still could have appealed if she was concerned about her daughter, right? And that – and that is my next point, that Dela Cruz here is Charlie Miller. Charlie Miller could have appealed. Right. Charlie Miller had the incentive – the same incentive to appeal. I grant you – if I may – might interrupt. I grant you the analysis and the way that you can string together the opinions, but the holding in the case was that he had standing. There was never a majority holding on that issue. No, they – they granted standing. I mean, they allowed it to pursue. They allowed the claim to be pursued. They denied it on the merits. I would – I would urge this Court to read the Seventh Circuit's decision in Wedderburn that's cited in my supplemental brief. The issue of standing was disagreed upon before – between Scalia and Thomas. It was fractured, no doubt. It was fractured. They never reached – they held that the claim in terms of equal protection, that Petitioner lost, but they never adopted Justice O'Connor's position, which the Attorney General urges this Court to adopt, or Stevens or Scalia. No. They never reached the majority holding. They did reach the merits, so they had to get overstanding at some – in some level. But let me ask you one further question. The reason that this issue hasn't been resolved by the panels I've been on is because ultimately went to mediation because the government usually isn't eager to send kids away when – and allow the mothers to stay. Now, we have an older child here. Is the government amenable to mediation in this case? We would be. And I want to discuss on the record with the Court that we didn't come to this case lightly. I recognize the immigration judge urged Scalia to seek deferred action almost five years ago. And I contacted counsel prior to coming to this argument if that had happened. And for us, the powerful legal issue in this case, combined with the fact that Scalia, from our view, had not sought the immigration judge's – taken on her advice, prompted us to defend this case and keep defending it when it was set forth for argument. This is a case where – and again, here's the other thing about – if she gets relief, you just don't want to lose on this issue. Well – I mean, basically – It's not that. You consider the issue significant enough that derivative means derivative and that you want it to be that if you're not – that you rise and fall if you go derivative, otherwise file yours separately. It will certainly help the Attorney General. And I just want to say one more thing. Counsel, you're – I know. Can I say one more thing? If it's related, go ahead. That the denial of a petition for review in this case will not stop or in any way interfere with a separate avenue for relief outside of this proceeding. All right. Thank you, counsel. Your time has expired. Okay. Thank you. Mr. Resko, you have some time left. Yes. I just would like to state that obviously Petitioner would be amenable to mediation. Well, but why didn't she do – why didn't she do something? I mean, it seems to me that there's a stubbornness on the part of that – that you're seeking the court to say something about derivative and make a bigger point when, you know, why she can win the battle and lose the war here. I mean, her point is she wants to stay. Your Honor, I agree with that. She, in retrospect, obviously I think she should have applied for deferred action. Do you think? Control discretion, obviously. Counsel, we're talking about five years has elapsed. Why was nothing done in five years? Your Honor, I don't have the answer to that. While this is my office, I was given this file for the oral argument. And historically looking at the file, I didn't see a reason as to why she – why there was no request for the deferred action. Counsel, may I just add? I gather there are two avenues of relief, potentially, maybe three. One is the deferred action to which the IJ referred was deferral of prosecution, which was discretionary, right, at the time? Yes. Okay. Now you have the new DACA. I thought that's what you were talking about earlier. That's only available as of June 2012, right? Yes. Okay. So that's a new avenue of relief. And then you potentially could have a file of several withholding claims. Is that what we're talking about? Yes. Yeah, the reason I was thinking about mediation wasn't necessarily deferred prosecution, but rather the new DACA initiative. And that's what I understood also, Your Honor. Well, it would seem to me, Counsel, that if you took nothing away from this argument other than the fact that obviously this panel has not consulted, but the rigorous questions over this and over the potential for losing on that issue, you know, winning the battle and losing the war, as it were, doesn't seem the way to go. Your Honor, again, I agree with that. However, I will indicate that there is a legitimate issue that is raised before the Court on the derivative asylum claim. But with that being said, obviously, yes, I do think that at the time, without knowing any additional information, looking at this, I would say that deferred action, prosecutorial discretion, would be an avenue that we're going to instruct Ms. Castillo to pursue. Well, but it just would seem to me that you don't win a broader legal immigration issue on the backs of someone that might have other avenues of relief. And I'm not saying that that occurred here, Your Honor. I'm not saying that. I am saying that after being denied, the step to go was to file an appeal. And whether it was the additional step of pursuing another road for relief available to Ms. Castillo, I don't have an answer. But I don't want to say, well, we're only doing it because we think that there is a clear legal issue that we need to win on this case. I just think in procedure, she had lost. She had an opportunity to file an appeal. And that was the way the case was. Thank you. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. Thank you. Thank you.
judges: O'scannlain, Thomas, Callahan